**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CIVIL ACTION NO. 5:13-CV-00067-GNS-LLK**

**ERIC LLOYD HERMANSEN**                                                    **PLAINTIFF**

**v.**

**LaDONNA THOMPSON, et al.**                                               **DEFENDANTS**

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND RECOMMENDATION**

Plaintiff, a Jewish inmate at the Kentucky State Penitentiary (KSP) in Eddyville, Kentucky, filed a civil rights action under 42 U.S.C. § 1983 (premised on the First-Amendment Free-Exercise Clause) against various KSP employees and officials in their individual capacities only.  Plaintiff filed this action shortly after being transferred to KSP from the Kentucky State Reformatory (KSR) in LaGrange, Kentucky, where he and other Jewish inmates had successfully negotiated changes concerning kosher meals.  Upon transfer, Plaintiff immediately noticed that, in his opinion, the meals at KSP were not kosher, and he demanded changes similar to those previously implemented at KSR.

The parties are in the process of negotiating changes at KSP similar to those at KSR, which would result in settlement of Plaintiff's claims for injunctive relief.   The present matter concerns Plaintiff's claim for actual and punitive damages occasioned by the constitutional "injury" of Defendants' not having implemented these changes immediately upon demand.

The Court referred this case to the undersigned Magistrate Judge for ruling on all non-dispositive motions and findings of fact and recommendation on any dispositive matter.  Docket Number (DN) 11.

Defendants filed a motion for summary judgment with respect to Plaintiff's claim for actual and punitive damages, to which Plaintiff responded in opposition, and Defendants replied.  DN 79, 83, and 85.  The matter is ripe for determination.

The Magistrate Judge RECOMMENDS that the Court GRANT Defendants' motion (DN 79) due to an absence of any genuine issue of material fact showing that Defendants' acts and omissions "violate[d] clearly established statutory or constitutional rights of which a reasonable [defendant] would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), as required for actual damages; or were "motivated by evil motive or intent [or] involve[d] reckless or callous indifference to the federally protected rights of others," *Smith v. Wade*, 461 U.S. 30, 56 (1983), as required for punitive damages.

### Background facts and procedural history

In 2008, Plaintiff was one of six Jewish inmates who filed an action against various KSR employees and officials in both their official and individual capacities for violating their rights to kosher meals under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-1 et seq. (hereinafter "RLUIPA"), to kosher meals.   Plaintiffs sought injunctive relief and money damages. *Froman v. Kentucky Department of Corrections*, Civil Action No. 3:08-CV-00243-H (W.D.Ky.), DN 1, p. 8.

The Court dismissed all official-capacity claims under the Eleventh Amendment.  *Froman*, DN 8. The parties settled the injunctive-relief claims.  *Froman*, DN 113.  The Court dismissed the remaining individual-capacity claims for money damages.  *Froman*, DN 126.

In 2012, after dismissal of these claims, Plaintiff was transferred to KSP, where he "immediately became aware that none of the food being served to him and Jewish prisoners at KSP was kosher," i.e., it was not up to KSR standards.  DN 1, p. 10.

Plaintiff filed a motion for permanent injunction seeking kosher-meal reform at KSP and all other Kentucky Department of Corrections facilities.  *Froman*, DN 190.  The Court denied the motion "[b]ecause Hermansen is challenging the kosher practices at KSP and at all KDOC institutions, relief is not available in this action [which concerned only KRS practices].  Rather, he must file a new complaint." *Froman*, DN 198.

In response, Plaintiff filed the present Civil Complaint For Declaration Of Rights And For Permanent Injunction. DN 1. Defendants allegedly conspired and acted in concert to violate Plaintiff's First-Amendment rights by refusing to provide him a "truly kosher meal as dictated by the Jewish laws of kashruth." DN 1, p. 36. He sought injunctive relief in the form of changes at KSP similar to those at KSR, a judgment and/or declaration from the Court to the effect that Defendants violated his First-Amendment rights (pp. 37-38), and punitive damages awarded by a jury on the ground that "the acts and omissions by the named defendants [in denying him kosher meals] each and together contrary to the First Amendment, shock the conscious of the average person and are ripe for punitive damages" (p. 36).

Plaintiff filed a pleading in this action (DN 7), which, upon initial screening, the Court construed as an amendment to the complaint adding certain claims. The Court characterized the additional claims as "regarding the lack of kosher food" in violation of the RLUIPA and allowed all claims to proceed. DN 11.

Although they have not submitted an agreed order for the Court's signature, the parties apparently have successfully negotiated a settlement of Plaintiff's injunctive-relief claims. See Agreed Report Of Terms Reached On Claims For Injunctive Relief. DN 79-2.

Plaintiff has notified the Court that he does not abandon his punitive damages claim and that he seeks "recovery of all recoverable actual and punitive damages in this matter." DN 73.

### Governing Legal Standards

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of any material fact that would preclude entry of judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying evidence in the record that demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this

burden, the non-moving party must then produce specific evidence proving the existence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A finding of qualified immunity shields state actors, including prison officials, from liability for civil damages. "Qualified ... immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal citations and quotations omitted). The defense has an objective and a subjective component. Id. "The objective element involves a presumptive knowledge of and respect for basic, unquestioned constitutional rights. The subjective component refers to permissible intentions." Id. Qualified immunity will not protect an official who "knew or reasonably should have known" that his action, taken within his "sphere of official responsibility," would violate a plaintiff's constitutional rights, or if the official "took the action with the malicious intent to cause a deprivation of constitutional rights or other injury ...." Id. In short, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818.

The Court may analyze whether the official "would reasonably believe that his actions were not in contravention of [a plaintiff's] rights" before or in lieu of a finding that the plaintiff's constitutional rights were violated. *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010).

Punitive damages are appropriate in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir.2015) quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983).

**Findings and Conclusions**

In light of the foregoing standards, the Magistrate Judge finds and concludes as follows:

1.  All of Plaintiff's claims relevant to the present motion for summary judgment are against Defendants in their individual capacities only.

2. To the extent Plaintiff's claims are based on the RLUIPA,[1] the RLUIPA does not permit money-damages claims against defendants sued in their individual capacities.  *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir.2014).

3.  To the extent Plaintiff's claims are based on the First Amendment, Defendants are entitled to qualified immunity due to an absence of evidence that their acts and omissions "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  From both an objective and subjective perspective, Defendants were entitled to accept at face value the Court's determination, following Plaintiff's transfer to KSP, that they were not required to immediately implement changes similar to those at KSR and that, to obtain such relief, Plaintiff would have to "file a new complaint" and establish his First-Amendment claims. *Froman*, DN 198, p. 4.  Additionally, in light of the changes implemented or soon to be implemented at KSP, including installation of a separate kosher kitchen area within its already existing kitchen, Defendants reasonably could have believed that Plaintiff's claims "have already been resolved."  Id.

4.  Qualified immunity shields Defendants from liability for civil damages.

5.  Plaintiff admits that he "has only requested an award of punitive [and not compensatory] damages in this case."  DN 83, p. 4.  Even if they were objectively and subjectively wrong in believing

---

[1] For purposes of analyzing the present motion for summary judgment, the Court declines to apply counsel's position, in relation to his second motion for attorney fees, that Plaintiff's claims – or at least, counsel's representation of them -- did not involve any claim premised on the RLUIPA.  DN 84.  The Court has clarified that Plaintiff's claims are premised on both the RLUIPA and the First Amendment.  DN 19.  The attorney-fee rate-ceilings established by 42 U.S.C. § 1997e(d) – which counsel seeks to avoid -- apparently apply in both RLUIPA and First-Amendment Section-1983 cases.  See, for example, *King v. Zamiara*, 788 F.3d 207, 218 (6th Cir.2015) (In § 1983 actions, Section 1997e(d)(2) "limits the attorney fee to 150 percent of the money judgment").

that they were not denying Plaintiff his First-Amendment rights, there is no evidence that the denial was "motivated by evil motive or intent [or] involve[d] reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

6.  Defendants are entitled on summary judgment with respect to Plaintiff's claims for actual and punitive damages due to an absence of any genuine issue of material fact that would preclude entry of judgment in their favor. Fed.R.Civ.P. 56.[2]

### Discussion and Commentary

Notwithstanding the Order in the *Froman* case at Docket Entry 198, referenced above in Finding No. 3, Plaintiff's First-Amendment claims would have appeared to a reasonable defendant not to be supported by *Froman*.  *Froman* did not state or imply that the changes at KRS regarding kosher meals were constitutionally mandated.  Rather, the changes were either voluntary or based loosely on the RLUIPA.  Therefore, Plaintiff's claim that the same or similar changes at KSP were required is without merit.  In any event, Defendants had a reasonable basis for so believing.  On that independent basis, Defendants are entitled to qualified immunity.

Plaintiff's complaint is permeated with an assumption that certain unidentified Court order(s) in *Froman* and the fact of settlement of Plaintiffs' claims for injunctive relief established that the changes implemented at KSR regarding kosher meals were dictated by the First Amendment.  In other words, Plaintiff assumes that the pre-settlement regulations, customs, policies, and procedures at KSR pertaining to kosher meals violated the First-Amendment rights of certain Jewish inmates.  See, for example, DN 1, p. 1 ("[D]espite previous Court Order(s) and Settlement in [*Froman*] Hermansen's First Amendment rights under the Free Exercise and Establishment Clauses" continue to be violated); p. 2 (Plaintiff is "still being denied his First Amendment rights as clearly established in *Froman*"), p. 3

---

[2] The Court does not reach the disputed issue of whether 42 U.S.C. § 1997e(e) bars recovery in this case of an alleged constitutional "injury": "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."

(Defendants "are in such a position to ensure that Hermansen is afforded his protected First Amendment right to be provided a truly kosher meal as agreed to and assured by previous defendants in *Froman*").

Therefore, according to the argument, upon his transfer to KSP and complaint about the food, the First Amendment dictated that KSP employees and officials immediate implementation changes to conform to KSR standards.

Plaintiff's assumption is erroneous because *Froman* found that Plaintiffs had abandoned any First-Amendment claim by neglecting to mention such claim in their second amended complaint. *Froman*, DN 126, p. 2.  Additionally, in settling the injunctive-relief claims, the *Froman* Defendants did not admit to any First-Amendment violation.

**An RLUIPA violation does not necessarily imply a First-Amendment violation.**

To the extent the settlement in *Froman* was motivated by a viable RLUIPA claim, this does not necessarily imply that a First-Amendment violation occurred at KSR or that the changes implemented at KSR were constitutionally required.  This is because it is generally easier to establish an RLUIPA claim than a Free-Exercise violation.

To state a claim under 42 U.S.C. § 1983, Plaintiff must show:  (1) that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States of America; and (2) that the deprivation was caused by a person acting under the color of state law.

The First Amendment, made applicable to the states by the Fourteenth Amendment, provides that:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

While inmates retain a constitutional right to free exercise of religion, prison officials may impinge on that right if "reasonably related to legitimate penological interests."  *Haight v. Thompson*,

5:11-CV-00118-R, 2013 WL 1092969 (W.D.Ky.) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)), reversed on other grounds in *Haight v. Thompson*, 763 F.3d 554 (6th Cir.2014).

In analyzing whether an impingement is reasonably related to a legitimate penological interest, a reviewing court considers four factors:  First, "there must be a valid rational connection between the prison regulation and the legitimate governmental interest put forward to justify it."  *Haight* quoting *Turner* (internal citations omitted).  Second, the court asks "whether there are alternative means of exercising the right that remain open to prison inmates."  Id.  Third, the court considers "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."  Id.  The fourth factor asks whether "a prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a de minimis cost to the valid penological goal."  *Overton v. Bazzetta*, 539 U.S. 126, 136 (2003).

In *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), the Supreme Court applied the above factors and held that prison officials did not violate an inmate's Free-Exercise rights when they did not allow him to attend a religious service.

In *Haight*, supra, this Court applied the *Turner* factors and held that KSP officials did not violate the Free-Exercise rights of certain inmate practitioners of the Native American religion when they prohibited a sweat lodge and certain traditional foods at the annual powwow, which authorities permitted.

In *Jackson v. Risner*, 5:14-CV-00103-GNS, 2015 WL 6870144 (W.D.Ky.), Plaintiff filed a Section 1983 action challenging the kosher-meal program at the Green River Correction Complex in Central City, Kentucky.  Jackson alleged that the prison authorities violated his First-Amendment Free-Exercise rights. *Jackson*, DN 1, p. 5.  However, the focus of his complaint was the effect upon his health of his refusal of foods he deemed non-kosher:  He had "lost 37 pounds and has constant fatigue and stomach cramps."

Id.  The Court granted Defendants' motion for summary judgment, finding no evidence of violation of a constitutional right because:

> The Sixth Circuit has held "that prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions." *Alexander v. Carrick*, 31 Fed.Appx. 176, 179 (6th Cir.2002).  Further, "[f]or the inmate, this is essentially a constitutional right not to eat the offending food item.  If the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." Id. (citations omitted).  In the same vein, the Sixth Circuit has also found that serving vegetarian meals, instead of specifically Halal meals, does not violate a Muslim prisoner's free exercise rights, as a vegetarian meal is indeed Halal.  *Robinson v. Jackson*, 615 Fed.Appx. 310, 311-14 (6th Cir.2015).

*Jackson*, DN 20, 2015 WL 6870144.

In 2000, Congress passed the RLUIPA, which provided institutionalized persons additional religious exercise rights and freedoms going beyond the constitutional minimums.  42 U.S.C. § 2000cc-1(a) provides, in pertinent part, that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicablility, unless the government demonstrates that imposition of the burden on that person—

> (1) is in furtherance of a compelling governmental interest; and

> (2) is the least restrictive means of furthering that compelling governmental interest.

The RLUIPA "expand[ed] the First Amendment protections accorded prisoners with respect to their religious beliefs."  *Haight*, supra, quoting *Hayes v. Tenn.*, 424 F. App'x 546, 554 (6th Cir.2011).  "The strict-scrutiny standard mandated by [42 U.S.C. § 2000cc–1(a)] altered the rational-basis framework for evaluating inmates' Free Exercise claims that had prevailed since the [Supreme] Court's decision in *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987)."  Id. quoting *Cutter v. Wilkinson*, 423 F.3d 579, 583 (6th Cir.2005).

In light of the foregoing standards, a valid RLUIPA claim (*Froman*) does not necessarily imply a Free-Exercise violation (this case).

Because *Froman* did not state or imply that the changes at KRS were constitutionally mandated, Plaintiff's claim that the same or similar changes were required at KSP is based on erroneous assumptions and faulty logic.  Defendants are entitled to qualified immunity.

## RECOMMENDATION

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the Court grant Defendants' motion for summary judgment (DN 79).

## NOTICE

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.1984).